

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS** LLP

SAN DIEGO • SAN FRANCISCO
LOS ANGELES • NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
PHILADELPHIA • SEATTLE

ARTHUR C. LEAHY

June 22, 2005

**VIA HAND DELIVERY**

Honorable Loretta A. Preska
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street, Room 1320
New York, NY 10007-1312

Re: *Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust, et al. v. Blanchard, et al.*
Case No. 1:04-cv-05954-LAP

Dear Judge Preska:

I write on behalf of the plaintiffs in the above-titled action concerning defendants' motions to dismiss based on Canadian law. When defendants recently filed their reply memoranda in support of their motions, they included, for the first time, declarations of two purported Canadian law experts – Messrs. Peter deCarteret Cory and Stanley M. Beck. Because the declarations were filed with defendants' replies, plaintiffs have not had the opportunity to respond to the issues raised by these two declarations. Accordingly, plaintiffs request that the Court consider the following with respect to the declarations:

**Defendants' Expert Mr. Beck Has Stated that the Canadian Business Corporations Act Provisions Regarding Derivative Actions Are Procedural; Therefore They Are Inapplicable Here**

Defendants fail to point out in their reply memoranda that one of defendants' purported experts, Mr. Stanley Beck, has written at least one article on the then-proposed Canadian Business Corporations Act ("CBCA"), the Act at issue in defendants' motions. In this article, Mr. Beck unequivocally stated that provisions of the CBCA related to derivative actions were *"**procedural**"* in nature. This is extremely important to defendants' motions to dismiss because the Court, in a diversity action such as this, may not apply the **procedural** law of a foreign forum, but rather must apply the procedural law of the forum in which the case is filed. *Woodling v. Garrett Corp.*, 813 F.2d 543, 551-52 (2d Cir. 1987); *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 102 (S.D.N.Y. 2002).

In essence, Mr. Beck confirms in the article discussed immediately below that the CBCA's provisions concerning derivative action provisions are procedural. Thus, all of

401 B Street, Suite 1600 • San Diego, California 92101-4297 • 619.231.1058 • Fax 619.231.7423 • www.lerachlaw.com





Honorable Loretta A. Preska
June 22, 2005
Page 2

defendants' arguments based on the CBCA – that Canada is the only forum where a derivative action can be brought, and that plaintiffs must obtain leave of court before filing – refer to **procedural** rules of Canada, as defendants' own expert himself states. Therefore, all these Canadian procedural rules are inapplicable here. *Woodling*, 813 F.2d at 551-52; *Astra Aktiebolag*, 208 F.R.D. at 102. Rather, New York's procedural rules apply, and it is undisputed that they allow this action to proceed here. *See* New York Business Corporations Law ("BCL") §§1319(a)(2), 626.

To explain, in an article Mr. Beck wrote in 1974, during the period when the draft CBCA was before Canada's Parliament, Mr. Beck examined the deficiencies of the common law derivative action, and observed that:

> It was to remedy these problems and to open the door to a wider range of shareholders' derivative actions that section 99 was included in the Ontario [Business Corporations] Act [("OBCA")] **and section 229 in the [CBCA]**.[1] What follows will be an analysis of the shareholders' derivative suit in light of those sections. Some of the matters that have been adverted to above will be analyzed in more detail **as the[se] sections . . . are procedural only** . . . .

Stanley M. Beck, *The Shareholders' Derivative Action*, 52 Canadian Bar Review 159, 168 (May 1974) (emphasis added) (attached hereto as Exhibit 1). The same article contains other statements confirming that the CBCA's derivative action provisions are strictly procedural. For instance, Mr. Beck stated that "attempts to encourage shareholder litigation and clear **the procedural thicket** that all but blocks entrance to the courts have not, until recently, received much support." *Id.* at 162 (emphasis added). Similarly, Mr. Beck stated that "Professor Rostow has characterized such shareholder actions as '**the most important procedure** the law has yet developed to police the internal affairs of corporations.'" *Id.* at 163 (emphasis added).

Significantly, Mr. Beck stated:

> For these reasons an important part of the company law reform that has been under way in Canada since the new [OBCA] was introduced in Ontario in 1970 has been to provide **a procedure** whereby the road to the courts would be relatively smooth and straight for genuinely aggrieved minority shareholders. It is the purpose of this article to examine and compare the shareholders' derivative suit as provided by section 99 of the [OBCA] and

---

[1] This section was the predecessor to the CBCA's current derivative action provision, CBCA §239.



Honorable Loretta A. Preska
June 22, 2005
Page 3

> *section 229 of the draft [CBCA] and to ask whether they provide an adequate procedure through which minority shareholders can seek a remedy for wrongs done to the corporation.*

*Id.* at 163-64 (emphasis added; citations omitted).

The relevance of these passages to defendants' motions is considerable. Defendants have strenuously argued the CBCA provisions respecting derivative actions are substantive not procedural. Yet, their own expert, Mr. Beck, contradicts defendants' arguments in the above article. Indeed, Mr. Beck's statements unequivocally support plaintiffs' and Canadian corporate law commentator Dennis Peterson's views (cited in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Plaintiffs' Opp.") at 17) that the CBCA's derivative action provisions are in fact **procedural**. Thus, under a conflict of laws analysis in this diversity case, because the CBCA provisions concerning derivative actions are procedural, this Court should disregard those Canadian procedural rules (*Woodling*, 813 F.2d at 551-52; *Astra Aktiebolag*, 208 F.R.D. at 102), and instead apply the procedural law of New York, which expressly allows suit against defendants here (as opposed to solely in Canada) without leave of court to file the action. *See* BCL §§1319(a)(2), 626. Defendants' own expert's statements that Canadian derivative action provisions are procedural is dispositive of defendants' motion.

**Mr. Beck's Prior Statements Indicate that This Case Is the Equivalent of a Canadian "Oppression Remedy" Action; Therefore Leave of Court Before Filing Is Not Required**

Defendants argue in their motion papers that this action is similar to an "oppression remedy" case pending in Canada and suggest that the action here is therefore unnecessary. *See, e.g.*, Nortel Networks Corporation's and Certain Individual Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Verified Complaint at 7 ("the Canadian oppression case closely resembles and overlaps this derivative claim"). Defendants are correct in a sense – this action seeks some relief for some conduct that is similar to that in the oppression remedy action. But, in fact, as we have previously pointed out, the instant action actually seeks much, much more than the oppression remedy. *See* Plaintiffs' Opp. at 3 n.4 (instant action alleges much broader wrongful conduct by more defendants over a longer period of time, seeks millions more in damages than Canadian action, and seeks far more injunctive/equitable relief). In other words, this action is a derivative-**plus** action – it seeks extraordinarily broad monetary relief (money damages caused to Nortel by defendants' two separate accounting frauds) and injunctive/equitable relief (recoupment of improperly paid bonuses and corporate governance reforms) based on much broader improper conduct by more defendants over a much longer period of time. Given this case's extremely broad contours, under Canadian law, this action is more accurately termed an "oppression remedy," accordingly to another article authored by defendants' expert Mr. Beck, which is discussed below.



Honorable Loretta A. Preska
June 22, 2005
Page 4

The point of this line of argument is very simple. Because this case is more accurately defined as an "oppression remedy" under Canadian law, it should be subject to Canadian law provisions that pertain to oppression remedies, not those applicable to Canadian derivative actions. And, importantly, for purposes of defendants' motion, **oppression remedies do not require leave of court before they may be filed, as Canadian derivative actions must**. Thus, defendants' argument that plaintiffs should have obtained leave of court before filing this action is without merit.

In support of this position is Mr. Beck's second article. In this article, Mr. Beck noted that **the oppression remedy is "beyond question, the broadest, most comprehensive and most open ended shareholder remedy in the common law world. It is unprecedented in its scope**." Stanley M. Beck, *Minority Shareholders' Rights in the 1980s*, L.S.U.C. 311, 312 (1982) (attached hereto as Exhibit 2). He then suggested that the oppression remedy largely overlaps, and may eventually "swallow up," the derivative action:

> An important question raised by the breadth of the oppression remedy is whether, and to what extent, it has swallowed up the shareholders' derivative action. Some of the actions complained of in the oppression cases might well constitute a breach of fiduciary duty that a director owes to the corporation. Ordinarily, this might lead to a shareholders' derivative action under section 97 of the OBCA . . . or section 232 of the CBCA. Under those sections, however, there are conditions precedent that must be satisfied and leave of the court must be obtained before the action may be brought. The remedy, in most instances, will run exclusively to the corporation and settlement is subject to judicial supervision. **Under the oppression remedy, a complainant may simply apply to the court for an order and the matter is heard, and remedies running to either or both of the corporation and the shareholders may be granted. The complainant has control of the action at all stages. Moreover, as has been noted, the sweep of the possible remedies is far greater.** At some point, the courts will have to sort out the question of the relationship between the shareholders' derivative action and the oppression remedy.

*Id.* at 318 (emphasis added). Along these same lines, Mr. Beck stated in his declaration that "it is not unusual for a derivative action to become an oppression action under the guidance of the Judge before whom the original action was brought." Declaration of Stanley M. Beck, ¶11.

Given the extremely broad allegations and extraordinary relief sought in this case, and further given Mr. Beck's statements that oppression remedies are the broadest of Canadian law's causes of action, this action is more accurately defined as an oppression remedy.



Honorable Loretta A. Preska
June 22, 2005
Page 5

Because it is undisputed that an oppression remedy does not require leave of court before filing the action, defendants' arguments that plaintiffs were required to do so are incorrect.

**Defendants' Expert Mr. Cory Ignores Canada's Interpretation Act**

In connection with the definition of "court" under §2(1) of the CBCA, defendants attack plaintiffs' arguments by asserting that it was unnecessary for Canada's Parliament to define the term to exclude Canada's Federal Court from having jurisdiction over CBCA cases, because it was already well-settled at the time that only provincial superior courts had such jurisdiction. See Reply Memorandum of Law in Support of Nortel Network Corporation's and Certain Individual Defendants' Motion to Dismiss the Verified Complaint at 5-7. To reach this erroneous conclusion, defendants rely on the Declaration of the Honorable Peter deCarteret Cory ("Cory Decl."). Mr. Cory reaches the same conclusion as defendants, opining that because "the Canadian corporations statute has defined 'court' as the superior court of each of Canada's provinces" since 1906, "when the CBCA was first enacted in 1975, Parliament did not need to define 'court' so as to exclude the concurrent jurisdiction of the Federal Court." Cory Decl., ¶¶27, 30 (citation omitted). But Mr. Cory's statement that there was no need to exclude the jurisdiction of the Federal Court completely ignores the provisions of another Canadian federal statute then in effect that affected the definition of "courts" in the CBCA. The statute Mr. Cory ignores is Canada's ***Interpretation Act*** ("IA"). See R.S. 1970, c. 1-23 (attached hereto as Exhibit 3).

By virtue of §3(1) of the IA, the IA applied to every Act of Canada's Parliament, including the CBCA. See IA §3(1) (***"Every provision of this Act extends and applies, unless a contrary intention appears, to every enactment, whether enacted before or after the commencement of this Act.***") (emphasis added).[2]

Importantly, the IA declared that:

> In every enactment
>
> \*   \*   \*
>
> "superior court" means
>
> (a)   in the Province of Ontario, Nova Scotia, New Brunswick, Prince Edward Island, Alberta or Newfoundland, the Supreme Court of the Province,

---

[2] "[E]nactment" was defined in the IA to "mean[] an Act." IA, §2(1). An "Act" was defined to mean "an Act of the Parliament of Canada," (*id.*) such as the CBCA.



Honorable Loretta A. Preska
June 22, 2005
Page 6

      (b)     in the Province of Quebec, the Court of Queen's Bench, and the Superior Court in and for the Province,

      (c)     in the Province of British Columbia, the Court of Appeal and the Supreme Court of the Province,

      (d)     in the Province of Manitoba or Saskatchewan, the Court of Appeal for the Province and the Court of Queen's Bench for the Province,

                       \*     \*     \*

      ***and includes*** the Supreme Court of Canada and ***the Exchequer Court of Canada***.

IA, §28 (emphasis added).

Significantly, the **Exchequer Court** was the predecessor of the Federal Court of Canada. *See* Exhibit 4 (attached hereto) at 2 ("The Federal Court of Canada continues the old Exchequer Court of Canada.") (Underwood Law Library, Southern Methodist University, Guide 703, *Researching Canadian Law (2001)*, available at http://library.law.smu.edu/resguide/canada.htm). Thus, by virtue of the IA, if the draft CBCA had simply conferred jurisdiction upon "superior courts" as it did in §2(1) of the CBCA without further elaboration, the CBCA could have been interpreted under the IA to confer concurrent jurisdiction upon the Exchequer Court or Federal Court of Canada. This completely supports plaintiffs' assertions that the CBCA definition of "courts" was written to clarify that Canada's Federal Court did not have concurrent jurisdiction over CBCA actions.

                                            Respectfully submitted,

                                            ARTHUR C. LEAHY

ACL:lai

cc:     All Counsel of Record
        (per attached service list)
          via overnight mail

S:\CasesSD\Nortel Derivative\Corres\ACL Judge Preska 0621.doc

## CERTIFICATE OF SERVICE

I, Kelly Stadelmann, hereby certify that on June 22, 2005, I caused a true and correct copy of the attached Letter Brief to be served by overnight mail to all additional counsel on the attached service list.

*/s/ Kelly A. Stadelmann*
Kelly A. Stadelmann

NORTEL DERIVATIVE
Service List - 6/21/2005    (04-0289)
Page 1 of 2

**Counsel For Defendant(s)**

Don Buchwald
Buchwald & Kaufman
100 Park Avenue
New York, NY 10017
  212/661-0040
  212/370-9885(Fax)

Harold McGuire
Entwistle & Cappucci LLP
299 Park Avenue, 14th Floor
New York, NY 10171
  212/894-7200
  212/894-7272(Fax)

Richard Albert
Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C.
565 Fifth Avenue, 9th Floor
New York, NY 10017
  212/856-9600
  212/856-9494(Fax)

Lee Richards
David Daniels
Richards Spears Kibbe & Orbe LLP
1775 Eye Street, N.W.
Washington, DC 20006-2401
  202/261-2962
  202/261-2999(Fax)

Guy Petrillo
Olivier P. Stauch
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
  212/698-3500
  212/698-3599(Fax)

Raymond R. Castello
Autumn Ji Sun Hwang
Fish & Richardson P.C.
153 East 53rd Street
Citigroup Center - 52nd Floor
New York, NY 10022
  212/641-2260
  212/258-2291(Fax)

Douglas C. Beatty
Pro Per
250 Saint Germaine Avenue
Toronto, Ontario
Canada M5M 1W3,

Stuart J. Baskin
Tai H. Park
Chad M. Yohn
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-4676
  212/848-4000
  212/848-7179(Fax)

NORTEL DERIVATIVE

Service List - 6/21/2005    (04-0289)
Page 2 of 2

**Counsel For Plaintiff(s)**

Arthur C. Leahy
Laura M. Andracchio
Amber L. Eck
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
401 B Street, Suite 1600
San Diego, CA  92101-4297
  619/231-1058
  619/231-7423(Fax)

Samuel H. Rudman
David A. Rosenfeld
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
200 Broadhollow Road, Suite 406
Melville, NY  11747
  631/367-7100
  631/367-1173(Fax)

**Courtesy Copy**

Daniel L. Berger
Bernstein Litowitz Berger & Grossmann LLP
1285 Ave of the Americas, 38th Fl.
New York, NY  10019
  212/554-1400
  212/554-1444(Fax)

Henry Gradstein
David Sergenian
Gradstein, Luskin & Van Dalsem
12100 Wilshire Blvd., Suite 350
Los Angeles, CA  90025
  310/571-1700
  310/571-1717(Fax)